IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

WAYNE D. ROBERTS,                          :
                                           :
     Plaintiff,                            :
                                           :
vs.                                        :  Civil Action File No.
                                           :  **1:04-CV-135 (WLS)**
KEVIN ROBERTS, et. al,                     :
                                           :
     Defendants.                           :
                                           :
_____

## RECOMMENDATION

Presently pending in this *pro se* prisoner 42 U.S.C. § 1983 action are defendants' motion to

dismiss party Doolittle (doc. 58) and their motion for summary judgment (doc. 61).

Plaintiff filed his original complaint on September 14, 2004 (R. at 4). In a Recommendation

dated July 21, 2005, the United States Magistrate Judge recommended that all of Teresa Roberts'

claims be dismissed, and that all of Wayne Roberts claims, except his claim of deliberate

indifference to serious medical needs, be dismissed. It was recommended that all of the original

defendants named in plaintiff's complaint be dismissed and plaintiff was ordered, in a July 22,

2005 Order, to supplement his complaint by naming individual defendants whom he thought

responsible for the deprivation of medical care. (R. at 19, 22).

On July 25, 2005, plaintiff filed a 36 page "Amendment" (R. at 23). On August 24, 2005,

plaintiff filed an Objection to the Recommendation of the United States Magistrate Judge. (R. at

27). On August 26, 2005 plaintiff filed another 53 page "Amendment" (R. at 28).  After

reviewing the plaintiff's Objection and the United States Magistrate Judge's Recommendation,

the District Judge accepted and adopted the Recommendation in full on January 18, 2006 (R. at

29).

On February 8, 2006, plaintiff filed a 13 page (with 59 pages of exhibits) "Amendment to Claims for Relief" (R. at 30). Also on February 8, 2006 plaintiff filed a 23 page "Motion to Reconsider, or to the Alternative to Amend, and Make Additional Findings of Fact under Rule 52(b) to Final Order dated January 18, 2006 (Docket No. 29) with New Amended Claims for Relief Fed. R. Civ. Proc. 15(a)." (R. at 31).

In all of plaintiff's "Amendments," he continued to claim Teresa Roberts was a plaintiff and to assert claims that had already been dismissed against defendants who had already been dismissed. Therefore, in an Order dated February 10, 2006, the United States Magistrate Judge again explained to plaintiff that the only remaining potentially viable claim he had in this case was his claim for deliberate indifference to serious medical needs. (R. at 32). Plaintiff was ordered to provide the supplemental information as to this claim alone within 30 days.

On February 16, 2006, plaintiff filed a Notice of Appeal from the Court's January 18, 2006 Order (R. at 29), which was dismissed on August 11, 2006 for lack of jurisdiction.  On February 24, 2006, plaintiff filed an "Objection" to the United States Magistrate Judge's February 10, 2006 Order (R. at 36).  On March 17, 2006, Plaintiff filed a "Supplemental Complaint Pursuant to Magistrate's Order." (R. at 38), which resulted in the service of the complaint on defendants Dr. Billy Graham, Nurse Gadson, Celene Doolittle, Kevin Roberts, George Laster, and Christine Cross.

In his March 17, 2006 supplement, plaintiff states that on August 6, 2002 he was diagnosed with "diabetic disabilities (i.e., neuropathy, retinopathy, and macular edema)." According to plaintiff, an unnamed doctor issued him a "medically unassigned profile" calling for no

prolonged standing, a bottom bunk, only soft shoes, and allowing him to lie down when in severe pain. Plaintiff states that on March 2, 2004, Kevin Roberts, George Laster, and Christine Cross ordered Dr. Graham to remove the medically unassigned profile. According to plaintiff, Dr. Graham complied and then Nurse Gadson assigned him to be a sanitation orderly, take mandatory wellness walks, and attend yard call. Plaintiff states that on July 28, 2004, his medically unassigned profile was reinstated, but he was not informed of this and he apparently had to continue with his sanitation orderly duties, mandatory walks, and yard call.

### Motion to Dismiss

Defendants assert that defendant Doolittle should be dismissed from this action as she has never been served with this lawsuit pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

Plaintiff actually agrees with this motion, and agrees to have Doolittle dismissed from this action. (Doc. 60, p2). Therefore, it is the RECOMMENDATION of the undersigned that defendant Doolittle be dismissed from this action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

### Motion for Summary Judgment

As an initial matter, plaintiff, in his response to this motion, agrees that defendants Kevin Roberts, George Laster, and Adrienne Gadson should be dismissed from this case, as plaintiff agrees with the defendants that they cannot be held liable for the alleged constitutional violations of which plaintiff complains based upon a theory of respondeat superior. (Doc. 67, p.3).

However, plaintiff asserts that the remaining defendants, Dr. Graham, Christine Cross, and Emmett Griswold are liable to him for constitutional violations. Defendant Griswold was

dismissed from this case on January 19, 2006 (doc. 29), and is no longer a defendant in this action.

Consequently, as an initial matter, it is the RECOMMENDATION of the undersigned that defendants Kevin Roberts, George Laster, and Adrienne Gadson be DISMISSED from this action.

As to the remaining defendants, Dr. Graham and Christine Cross, plaintiff alleges that they were deliberately indifferent to his serious medical needs. At all times relevant to this lawsuit, plaintiff was confined at Lee State Prison, where these two defendants worked as the Medical Director and the Chief Counselor, respectively.

In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992)(citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a

public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976).   However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations."   It must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25 (1993).    Knowledge of the medical need alleged or circumstances clearly indicating the existence of such need is essential to a finding of deliberate indifference.  Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1191 (11th Cir. 1994), quoting  Horn ex rel. Parks v. Madison Co. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994), cert. denied, 513 U.S. 873 (1994).    In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or

omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." McElligott v. Foley, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

A medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994) (quotation marks and citation omitted).

According to Dr. Graham's affidavit, plaintiff is an insulin dependent diabetic and has developed certain diabetes-related conditions, including diabetes mellitus, retinopathy, peripheral neuropathy, mild renal insufficiency, chronic allergies, and essential hypertension. According to Dr. Graham's affidavit, the management and treatment of insulin dependent diabetes is a complex, rapidly evolving field, and therefore relies upon Clinical Updates from the Georgia Department of Corrections Office of Health Services and consultations with endocrinologists and other specialists in diabetes.

Plaintiff's medically unassigned profile was initiated on August 6, 2002 by a retinal specialist, because plaintiff had complained that his eyesight had been getting worse over a two year period and he had difficulty reading.. The retinal specialist found mild non-visually significant cataracts in each eye and some diabetic macular edema that would cause some difficulty but that could be treated with focal laser surgery. The surgery was recommended and plaintiff was given a medically unassigned profile for 30 days; the profile was extended for 6

months on August 13, 2002 and February 27, 2003 pending the surgery.

Dr. Graham saw plaintiff in the medical unit on February 5, 2004 for pain in his feet. Dr, Graham prescribed additional medicines of Nuvulin, Motrin, Sudafed, Erythromycin, and insulin, further advising plaintiff that he should increase his exercise which is part of any diabetes wellness program. Prior to the February 5, 2004 appointment with Dr. Graham, plaintiff had medically unassigned profiles to lay down for severe pain for thirty minutes; bottom bunk; avoid chemicals, dust, and smoke; no prolonged standing greater than 15 minutes; and a permanent soft shoe profile. Dr. Graham discontinued all the profiles and then reinstated all profiles, as is his normal practice at each patient's initial evaluation in order for all profiles to run on the same schedule. (Graham affidavit, para. 8, medical record, p. 160).

On February 11, 2004, Dr. Graham prescribed Amoxill for cough and congestion. On February 19, 2004, Dr. Graham ordered that plaintiff receive a diabetic snack every day at 10:00 am for 180 days, and was scheduled for a physical exam with bloodwork.

On March 2, 2004, Dr. Graham reviewed plaintiff's profiles and follow-up, and ordered an ophthalmology consult.

Dr. Graham determined that plaintiff's overall physical condition and physical examinations would allow plaintiff to perform light duty without any substantial risk of harm, and changed plaintiff's profiles accordingly, but continued all of plaintiff's diabetes related profiles, which included walking at his own pace, bottom bunk profile, a soft shoe profile, a profile for no prolonged standing greater than 15 minutes, a profile to lay down for severe pain, and no duty with exposure to smoke, chemicals, and dust. (Graham affidavit, para. 12, medical record, p. 158, 121, and 161).

Dr. Graham has no authority for specific work detail assignments. According to GDC SOP IIC02-004, all work assignments are made by the Classification Committee. Chief Counselor Cross is on the Classification Committee, but does not have the authority to make assignments without bringing it before the entire Classification Committee. (Cross affidavit, para. 8).

On March 8, 2004, the Classification Committee assigned plaintiff to work as an AM session dormitory orderly, whose duties include wiping down the tables in the lobby of the dormitory with a damp cloth and light sweeping with a push broom, which allowed plaintiff to work at his own pace and rest when needed. (Cross affidavit para. 9).

On July 28, 2004 plaintiff's profiles were updated but no examination was performed. Plaintiff's next appointment was scheduled for August 17, 2004. Apparently, the plaintiff's medically unassigned profile was reinstated by a clerical error by a nurse. Dr. Graham noted this when he saw plaintiff on December 21, 2004. (Graham affidavit para. 16, 20; medical record p. 119, 145).

Plaintiff was evaluated by Dr. Graham on August 10, 2004 for multiple diabetic complaints. Dr. Graham adjusted plaintiff's profiles to allow plaintiff to walk at his own pace and to wear sunglasses for 60 days. On August 17, 2004, plaintiff saw Dr. Graham for a follow-up, and Dr. Graham encouraged plaintiff to increase his exercise level. (Graham affidavit, para. 18; medical records p. 152).

Plaintiff was seen in sick call on September 20, 2004; November 1, 2004; and November 19, 2004 for routine sick call complaints. Additionally, plaintiff was seen in the medical unit seven times from February 5, 2004 to December 21, 2004 for his diabetes and other conditions. He received referrals to Augusta State Medical Prison and laboratory tests for his diabetes, essential

hypertension, and lipids, and routine physical examinations, and was treated for cough and congestion, foot pain, sore tongue, difficulty breathing, wheezing, chronic indigestion, sore throat, blurred vision with spots, numbness in fingers and toes, allergies, and the loss of his voice.(Graham affidavit para. 21).

It is Dr. Graham's professional medical opinion that on March 2, 2004, plaintiff's condition had stabilized to the point that there was no longer a medical reason for plaintiff to have a medically unassigned profile and that he was capable of performing light duty.  Dr. Graham also is of the opinion that plaintiff did not suffer any serious physical injury nor was he under a substantial risk of harm for being assigned to light duty from March 2, 2004 to December 21, 2004.  Plaintiff's other diabetes related profiles were sufficient to protect plaintiff from any risk of harm while performing light duty assignment.  (Graham affidavit para. 23).

Plaintiff states in his response and supporting affidavit to the motion (doc. 67) that he needed a second surgery for his eyes, and the removal of the medically unassigned profile caused him harm because of his eye and swelling in his legs.   Plaintiff further states that he did not receive follow-up regarding his first retinal surgery until May 6, 2004, two months after his medically unassigned profile was removed, the diagnosis of retinal hemorrhaging he received then was evidence of Dr. Graham's deliberate indifference.  He further asserts that he was not capable of performing light duty.  Plaintiff admits in his response that he refused to return to Augusta State Medical Prison for further surgery regarding his eye because his follow-up from the last surgery took too long, and he insisted on seeing a local specialist instead.  (Doc. 73).

The record in this case is replete with continuing medical treatment for plaintiff's conditions.  Just because a plaintiff disagrees with the medical decision does not evidence deliberate

indifference to his serious medical needs. This case presents a classic example of a plaintiff's disagreement with the medical judgment used in plaintiff's treatment, sounding in medical malpractice. "[M]ere differences in opinion regarding medical treatment do not give rise to an Eighth Amendment claim." Estelle, 429 U.S. at 846. To demonstrate "significant" harm, a plaintiff must provide verifying medical evidence that proves that it was the denial or delay in medical treatment that caused the harm rather than an underlying condition or injury. Hill, 40 F.3d at 1186; Harris, 21 F.3d at 393-94 (11th Cir.1994).

As the undersigned finds that Defendant Graham was not deliberately indifferent to plaintiff's serious medical needs by removing plaintiff's medically unassigned profile and designating that plaintiff could perform light duty, it naturally follows that defendant Cross, and the unnamed members of the Classification Committee, were entitled to rely upon that designation in giving plaintiff a work assignment that accommodated that light duty assessment.

Nothing plaintiff has provided the court, nor anything revealed by a review of the record, rebuts defendants' properly supported motion for summary judgment.

### Failure to Exhaust

Defendants also assert that plaintiff failed to exhaust administrative remedies prior to filing this lawsuit.

Section 1997e(a) of the PLRA mandates that "no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted all "administrative remedies as are available," as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998).

"That provision plainly requires that administrative remedies be exhausted *before* the filing of suit, rather than while the action is pending." Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998) (emphasis in original).    According to records maintained at the prison, plaintiff filed nine formal and informal grievances while he was at Lee State Prison.  Plaintiff states he filed grievance 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 on May 27, 2004, complaining of the removal of his profile, among many other issues.  Plaintiff states that particular issue was not addressed.  However, plaintiff does not state whether he appealed that grievance at all.

Plaintiff has not satisfied the exhaustion requirement of § 42 U.S.C. 1997(e).   The clear mandate of  Alexander v. Hawk is that a  prisoner must exhaust the remedies available under an administrative remedy program before filing an action such as this.

It is undisputed that the PLRA exhaustion requirement applies to all federal claims brought by an incarcerated person. Logue v. Chatham County Detention Center, 152 Fed.Appx. 781, 783 (11th Cir. 2005), citing Porter v. Nussle, 534 U.S. 516, 520 (2002). The "exhaustion requirement is mandatory, and cannot be waived, even when the process is futile or inadequate." Logue, citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).


Therefore, it is the RECOMMENDATION of the undersigned that defendants' motion for summary judgment be **GRANTED,** both on the merits of the case and for plaintiff's failure to exhaust administrative remedies.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 22nd  day of February, 2008.


                                        //S Richard L. Hodge_____
                                        RICHARD L. HODGE
                                        UNITED STATES MAGISTRATE JUDGE

msd